IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MUHSIN SHARIF,

        Plaintiff,

   v.

BO RANKIN and RYAN
TRULLINGER, police officers with
the Eugene Police Department,

        Defendants.

No. 6:21-cv-00310-HZ

OPINION & ORDER

Thomas H. Nelson
Thomas H. Nelson & Associates
20820 East Glacier View Road
Zigzag, OR 97049

Brandon B. Mayfield
Law Office of Brandon Mayfield
3950 SW 185th Ave
Beaverton, OR 97007

    Attorneys for Plaintiff

1 – OPINION & ORDER

Benjamin J. Miller
Eugene City Attorneys Office
101 West 10th Avenue, Suite 203
Eugene, OR 97401

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Mushin Sharif brings this civil rights action under 42 U.S.C. § 1983 against Defendants Bo Rankin and Ryan Trullinger, police officers employed by the City of Eugene, Oregon. Plaintiff claims that Defendants used excessive force during an arrest in violation of his rights under the Fourth Amendment. Before the Court is Defendants' Motion for Summary Judgment. After Defendants filed their motion, Plaintiff filed a motion for leave to file a Second Amended Complaint. The Court addresses both motions.

## BACKGROUND[1]

Plaintiff's excessive force claims stem from his encounter with City of Eugene police officers, during which he was shot in the chest and leg by Defendants and then tased while he was lying on the ground. At approximately 10:21 a.m. on November 30, 2020, Eugene police officers received a report about a domestic violence situation involving Plaintiff. Miller Decl. Ex. 2, ECF 25-2. The victim told an officer that Plaintiff had left her home, was armed with a knife, and had told her that he would kill himself if she called 911. *Id.* Plaintiff had been at the victim's home in violation of a restraining order. *Id.* Shortly after speaking with the victim, officers located Plaintiff in a nearby park. *Id.*

---

[1] The Court's description of events primarily derives from its viewing of video footage recorded by the in-car video ("ICV") and body-worn cameras ("BWC") of Officer Trullinger and Officer Rankin. Trullinger Decl. Ex. 1, 2, ECF 26-1, 26-2; Rankin Decl. Ex. 1, 2, ECF 27-1, 27-2; *see Scott v. Harris*, 550 U.S. 372, 379-80 (2007) (holding that even at the summary judgment stage, where facts are viewed in the light most favorable to a plaintiff, a court should accept the version of events as depicted on video recordings).

2 – OPINION & ORDER

When police officers arrived in patrol cars, Plaintiff fled on foot. Rankin Decl. Ex. 1 ("Rankin ICV") 0:02-0:17; Trullinger Decl. Ex. 1 ("Trullinger ICV") 0:18-0:26. Several officers followed in pursuit both on foot and in patrol cars. Rankin ICV 0:17-1:09; Trullinger ICV 0:26-1:09. Plaintiff ran into an alley between two buildings that ended in an enclosed parking lot. Trullinger ICV 1:09-1:20.

Officer Trullinger pursued Plaintiff in his patrol car with lights and sirens on. *Id.* at 0:26-1:20. Officer Trullinger stopped at the end of the alleyway that led into the parking lot, partially blocking Plaintiff's only exit. Rankin ICV 1:13-1:15; Trullinger ICV 1:21. Plaintiff turned and walked rapidly back towards the alley where Officer Trullinger had stopped and exited his car. Rankin ICV 1:15-1:18; Trullinger ICV 1:22-1:28. Plaintiff, holding a knife in his right hand, advanced toward the driver's side of Officer Trullinger's car as Officer Trullinger retreated.[2] Rankin ICV 1:15-1:20; Trullinger Decl. Ex. 2 ("Trullinger BWC") 1:47-1:50. Officer Trullinger commanded Plaintiff to "stop man," yelled "drop the knife" six times, told Plaintiff "I'll shoot you," and said, "he's coming at me." Trullinger BWC 1:44-1:51. Plaintiff kept coming towards Officer Trullinger as Trullinger retreated, and when Plaintiff cleared the rear left corner of the vehicle, he began to run at Officer Trullinger. Rankin ICV 1:18-1:21; Trullinger BWC 1:48-1:52. Officer Trullinger, who had backpedaled several feet until he was in contact with the front bumper of the patrol car that had just arrived behind him, fired his handgun several times until Plaintiff fell to the ground at his feet. Rankin ICV 1:21; Trullinger BWC 1:52.

---

[2] Defendants assert that Plaintiff was "swinging the knife and shouting 'I'll kill you'" as he approached Officer Trullinger. Def. Reply Mot. Summ. J. 8, ECF 40. From the in-car video from Officer Trullinger's patrol car, the Court can see that Plaintiff was holding a knife and speaking aggressively as he walked towards Officer Trullinger. Trullinger ICV 1:22-1:28. But the Court cannot discern what Plaintiff was saying or whether he said, "I'll kill you" to Officer Trullinger.

3 – OPINION & ORDER

Just before the shooting, Officer Rankin had entered the alleyway in his patrol car and came to a stop behind Officer's Trullinger's car. Rankin ICV 1:11-1:18. As he saw Plaintiff "charging" Officer Tullinger's patrol car, Officer Rankin exited his own car and began shooting at Plaintiff at the same time as Officer Trullinger. Rankin ICV 1:18-1:21; Rankin Decl. Ex. 2 ("Rankin BWC") 1:42-1:43. Plaintiff was struck once in the right upper chest and once in the left thigh. First Am. Compl. ("FAC") ¶ 7, ECF 19. Plaintiff fell forward such that he ended up lying prone with his left arm and left upper torso under the left side of the front bumper of Officer Rankin's car, with the left front tire in contact with his left shoulder and the left side of his head. Trullinger BWC 1:54-2:03. Plaintiff remained conscious, and his right arm and hand, which still held the knife, were sticking out from under the car with the knife facing upward. Trullinger BWC 2:03

Several officers had now arrived on the scene and yelled at Plaintiff to "drop the knife" and "we want to render aid to you." Trullinger BWC 2:04-2:34. Defendant replied, "take it, take it" and "I can't move, I can't move my arm." Trullinger BWC 2:08-2:34; Rankin BWC 1:52-2:24. Within thirty seconds, an officer deployed a taser in dart-mode to Plaintiff's body, after which, the knife fell from Plaintiff's right hand. Trullinger BWC 2:34-2:36; Rankin BWC 2:18-2:19. Officer Rankin backed his car away from Plaintiff, and several officers immediately began tending to Plaintiff's wounds. Rankin BWC 2:54-6:10. Plaintiff was then transported to a hospital for medical care. He survived his wounds but was unable to walk for several weeks. FAC ¶ 7.

Plaintiff was subsequently indicted in Lane County Circuit Court on several counts of domestic violence and unlawful use of a weapon. Miller Decl. Ex. 5 ("Indictment"), ECF 25-5. Count 8 of the Indictment charged Plaintiff with "unlawfully and intentionally attempt[ing] to

use against Officer Ryan Trullinger a fixed-blade knife, a dangerous weapon" in violation of Oregon Revised Statute § ("O.R.S.") 166.220. *Id.* On September 23, 2021, through a stipulated facts trial, Plaintiff was found guilty of two counts of domestic violence as well as Count 8—unlawful use of a weapon. *Id.* Plaintiff is currently incarcerated at a state correctional facility. He brings claims under 42 U.S.C. § 1983, alleging that Officer Trullinger and Officer Rankin used excessive force in violation of his Fourth Amendment rights. Defendants move for summary judgment.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the

light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Summary judgment is improper where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (internal quotation marks omitted); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985) ("Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper.").

## DISCUSSION

Plaintiff claims that Defendants used excessive force in violation of his Fourth Amendment rights when they (1) shot him in the right chest and left thigh and (2) tased him while he was lying on the ground after being shot. Defendants move for summary judgment. Video evidence shows that neither Officer Trullinger nor Officer Rankin tased Plaintiff. Thus, the Court finds that Plaintiff fails to state a claim against Defendants as to that component of his excessive force claim and grants summary judgment for Defendants. As to the shooting, Defendants argue that under *Heck v. Humphrey*, Plaintiff's criminal conviction precludes his claim under § 1983 because it is based on the same facts. 512 U.S. 477 (1994). Defendants also assert that Officer Trullinger and Officer Rankin are entitled to qualified immunity.

I.     *Heck* Preclusion

Defendants assert that Plaintiff's Fourth Amendment excessive force claims are barred by the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a prisoner could not sue for damages under § 1983, if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. In other words, a criminal defendant may not pursue a "collateral attack on the conviction through the vehicle of a civil suit." *Id.* at 484 (citation omitted). The Court in *Heck* held that to bring a claim for malicious prosecution under § 1983, a plaintiff must show "termination of the prior criminal proceedings in favor of the accused." *Id.* "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Beets v. Cnty. of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2012) (quoting *Id.* at 486-87); *see Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc) (quoting *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996)) ("[I]f a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed."). But if a plaintiff's success on their § 1983 claim would not necessarily invalidate their criminal conviction, courts should allow the claim to proceed. *Heck*, 512 U.S. at 487. "Consequently, the relevant question is whether success in a subsequent § 1983 suit would necessarily imply or demonstrate the invalidity of the earlier conviction or sentence." *Beets*, 669 F.3d at 1042.

Along with claims for malicious prosecution, the *Heck* preclusion doctrine also applies to claims that police used excessive force in carrying out an arrest. *Cunningham v. Gates*, 312 F.3d

1148, 1155 (9th Cir. 2002). In the excessive force context, "[i]f the allegedly unconstitutional force was used in response to the same conduct upon which Plaintiff's convictions are based, then the claim is barred." *Berra v. Lyons*, No. 12-CV-226-TOR, 2014 WL 585008, at *7 (E.D. Wash. Feb. 14, 2014). But if the alleged excessive force was not precipitated by conduct for which the plaintiff was convicted of a crime, the § 1983 claim may proceed. *Id.*

In *Cunningham*, a criminal defendant was convicted of felony murder because he shot at police officers in the aftermath of a robbery, causing police to return fire and fatally shoot his accomplice. 312 F.3d at 1151. For the criminal defendant to succeed in his § 1983 suit alleging excessive force, he had to prove that police were not justified in shooting at him and his accomplice. *Id.* at 1154. The court held that the criminal defendant's § 1983 excessive force claim was barred under *Heck* because success on that claim would necessarily undermine his felony murder conviction. *Id.* at 1155.

Here, Plaintiff was convicted in state court of unlawful use of a weapon against Officer Trullinger. In determining whether his § 1983 claim is barred, the relevant inquiry is whether "the precise use of force that Plaintiff claims was unconstitutional was precipitated by the precise conduct that resulted in" Plaintiff's conviction for unlawful use of a weapon. *Berra*, 2014 WL 585008, at *7. To win on his excessive force claim, Plaintiff must show that the officers' use of force was objectively unreasonable under the circumstances. *Hooper v. Cnty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). The most important factor in determining whether a police officer's use of force was reasonable is whether the individual against whom force was used "posed an immediate threat to the safety of the officers or others." *Mattos v. Agarano,* 661 F.3d 433, 441 (9th Cir. 2011) (internal quotation marks omitted).

Plaintiff argues that despite the criminal judgment against him, his § 1983 claim is not barred by *Heck* because he did not brandish the knife or threaten Officer Trullinger with it when he was shot. But if the Court accepts Plaintiff's argument, it will undermine his state court conviction for unlawful use of a weapon. In finding Plaintiff guilty of unlawful use of a weapon, the state court necessarily determined that Plaintiff "unlawfully and intentionally attempt[ed] to use" the knife against Officer Trullinger. Miller Decl. Ex. 5. Accordingly, to convict Plaintiff, the state court found that Plaintiff posed a threat because he "attempted to use" a knife against Officer Trullinger during the encounter. Plaintiff's conviction indicates that Defendants' use of force was reasonable because Plaintiff posed an immediate threat to Officer Trullinger. *See Mattos,* 661 F.3d at 441. In other words, Plaintiff's conviction implies that "Defendants acted lawfully—that is to say, that they did not violate Plaintiff's Fourth Amendment rights—in responding to the assaultive conduct." *Berra*, 2014 WL 585008, at *7. Conversely, a contrary finding—that Defendants used excessive force in shooting Plaintiff—would undermine the state court's determination that Plaintiff posed a threat by attempting to use a knife against Officer Trullinger. Thus, Plaintiff's excessive force claim as to the shooting is barred by *Heck*.[3]

## II. Qualified Immunity

Defendants assert that, even if Plaintiff's claim is not barred by *Heck*, the Court should grant summary judgment for Defendants because both Officer Trullinger and Officer Rankin are entitled to qualified immunity. When properly applied, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," but does not protect "the plainly incompetent or those who knowingly violate

---

[3] Defendants argue in the alternative that Plaintiff's assertion that he was not a threat to Officer Trullinger is limited by issue preclusion. Because the Court finds that his § 1983 claim as to the shooting is barred by *Heck*, it does not address Defendants' issue preclusion argument.

9 – OPINION & ORDER

the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted). A defendant is entitled to qualified immunity if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis requires a court to address two questions: (1) whether the facts alleged or shown by the plaintiff establish a constitutional violation and (2) whether the right at issue was clearly established at the time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The right must have been clearly established at the time of the defendant's alleged misconduct, so that a reasonable official would have understood that what they were doing under the circumstances violated that right. *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *see Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.").

"[E]ven though the very action in question has not previously been held unlawful . . . officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741, (2002). But a police officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). Although existing cases need not be "directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks omitted). The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 ( 2015) (quotation marks omitted).

"[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks omitted). Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Id*. at 13 (internal quotation marks omitted and emphasis deleted). Cases involving similar facts can help move a case beyond the otherwise "hazy border between excessive and acceptable force" and provide notice to a police officer that a specific use of force is unlawful. *Id*. at 18 (internal quotation marks omitted).

The first question in the qualified immunity analysis is whether Plaintiff suffered a constitutional violation. To show that his constitutional rights were violated, Plaintiff must demonstrate that the officers' use of force was not objectively reasonable under the circumstances. *Hooper*, 629 F.3d at 1130 (citing *Graham*, 490 U.S. at 397). Reasonableness is judged from the "perspective of a reasonable officer on the scene," and must "allow for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Longoria v. Pinal Cnty.*, 873 F.3d 699, 704 (9th Cir. 2017) (citations omitted). The analysis "is limited to the facts that were knowable to the defendant officers at the time." *Id.* at 709 (citations omitted).

The relevant factors in determining whether a police officer's use of force was reasonable include "[1] the severity of the crime at issue, [2] whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he [was] actively

resisting arrest or attempting to evade arrest by flight." *Smith*, 394 F.3d at 701 (quoting *Graham*, 490 U.S. at 396). The use of deadly force is reasonable only if a suspect "poses a *significant* threat of death or serious physical injury to the officer or others." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (internal quotation marks omitted and emphasis added).

In shooting Plaintiff, Officer Trullinger and Officer Rankin used potentially deadly force. Video from the officers' body-worn cameras shows that, in the matter of seconds, Plaintiff posed a serious threat to the safety of Officer Trullinger. Armed with a knife, Plaintiff charged towards the driver's side of Officer Trullinger's patrol car. As Officer Trullinger retreated, Plaintiff began running towards him with the knife in his right hand. Officer Trullinger backpedaled into Officer Rankin's patrol car that had just arrived and could retreat no further. He made the reasonable decision to open fire as Defendant came within a few feet of him. Nothing in the Fourth Amendment barred Officer Trullinger from protecting himself, even though it meant firing multiple rounds at Plaintiff. *See Sheehan*, 575 U.S. at 612-13 (holding that officers were justified in using potentially deadly force by shooting the plaintiff when, holding a knife, she came within a few feet of an officer she had cornered).

Similarly, Officer Rankin arrived just in time to see Plaintiff, holding a knife, begin running towards Officer Trullinger. Plaintiff had ignored Officer Trullinger's commands to drop the knife, was advancing rapidly, and was within a few feet of Officer Trullinger. Events unfolded quickly—Officer Rankin jumped out of his car and immediately began shooting. Making a split-second decision, Officer Rankin could reasonably conclude that Plaintiff posed an immediate threat to Officer Trullinger. There was nothing objectively unreasonable about Officer Rankin's quick decision to shoot Plaintiff in order to protect Officer Trullinger. *See Kisela v.*

*Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (holding that an officer's decision to shoot a knife-wielding suspect to protect a third party whom he believed to be in danger was not objectively unreasonable). Under the circumstances, the use of potentially deadly force by Officer Trullinger and Officer Rankin did not violate Plaintiff's Fourth Amendment rights.

Because Defendants did not violate Plaintiff's Fourth Amendment rights when they used potentially deadly force against him, they are entitled to qualified immunity. But even if the officers' action in shooting Plaintiff had violated the Fourth Amendment, they would still be entitled to qualified immunity because, at the time, no precedent clearly established that use of deadly force was unlawful under the circumstances they faced. The burden is on Plaintiff to "identify a case where an officer acting under similar circumstances as defendants was held to have violated the Fourth Amendment." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (citation and internal brackets omitted). Thus, Plaintiff must identify precedent establishing that officers could not use deadly force when facing a suspect who was approaching them aggressively while holding a knife. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (quoting *Kisela*, 138 S. Ct. at 1153) ("Use of excessive force is an area of the law in which the result depends very much on the facts of the case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue."). Plaintiff points to no such case.

In *Sheehan*, police officers faced similar circumstances as Defendants here. 575 U.S. at 604-06. In that case, the officers were called to a group home to help a woman suffering a mental health crisis who had become violent. *Id.* at 604. When the officers entered her room, the woman was holding a kitchen knife and yelling "I am going to kill you." *Id.* After she cornered one of the officers and was only a few feet away from him, the officer shot her twice. *Id.* at 606. When

she did not immediately fall to the ground, another officer shot her multiple times. *Id.* When she finally fell, a third officer kicked the knife out of her hands. *Id.* The Supreme Court held that the officers were entitled to qualified immunity, reasoning that "[t]he Fourth Amendment standard is reasonableness, and it is reasonable for police to move quickly if delay would gravely endanger their lives or the lives of others." *Id.* at 612. As in *Sheehan*, no clearly established law put either Officer Trullinger or Officer Rankin on notice that their quick decision to shoot Plaintiff to protect Officer Trullinger would violate Plaintiff's Fourth Amendment rights. Thus, Defendants are entitled to qualified immunity for their use of potentially deadly force in shooting Plaintiff.

### III.    Leave to Amend the Complaint

After Defendants filed their motion for summary judgment, Plaintiff filed a motion for leave to file a Second Amended Complaint. Plaintiff has identified the officer who tased him and seeks to add that officer as a defendant, bringing a claim of excessive force against the officer. Plaintiff also proposes to add "John/Jane Does 1-3" as defendants but asserts no specific claims against them.

Federal Rule of Civil Procedure 15 allows a party to amend its pleading a second or subsequent time "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Defendants oppose Plaintiff's motion, but the Court may grant Plaintiff leave to amend if "justice so requires." *Id.* "Leave to amend is generally within the discretion of the district court." *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996).

In the interest of determining cases on their merits, courts are generally liberal in allowing parties to amend their pleadings. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). Leave should be "freely given" in the absence of undue delay, bad faith or dilatory motive, undue prejudice to the non-moving party, or futility of

14 – OPINION & ORDER

the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit has held that courts may deny leave to amend "only if there is strong evidence" of one or more of these reasons. *Sonoma Cnty.*, 708 F.3d at 1117. But "[a]mendments to add claims are to be granted more freely than amendments to add parties." *Union Pac. R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991).

When a Court assesses the factors to determine whether to grant leave to amend, "consideration of prejudice to the opposing party [] carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Prejudice is the touchstone of the inquiry under Rule 15(a)." *Id.* (internal quotation marks omitted).

In a proposed Second Amended Complaint, Plaintiff seeks to join as a defendant the recently identified officer who tased Plaintiff when he was on the ground after being shot by Defendants. Because the Court grants summary judgment for Defendants on all claims present before the Court, there will be no case or controversy remaining as to all current Defendants. Thus, granting Plaintiff leave to amend his Complaint, which would allow this case to continue, would unduly prejudice Defendants. Accordingly, the Court exercises its discretion to deny Plaintiff's motion for leave to file a Second Amended Complaint.

If he so chooses, may bring suit against the officer who tased him in a separate case. Because the alleged constitutional violation occurred on November 30, 2020, Plaintiff still has the opportunity to file claims against that officer within the two-year statute-of-limitations period. The Court declines to opine on whether it was reasonable for the officer to tase Plaintiff under the circumstances. That decision is for another court on another day.

15 – OPINION & ORDER

## CONCLUSION

Defendants' Motion for Summary Judgment [24] is GRANTED and Plaintiff's Motion for Leave to File a Second Amended Complaint [37] is DENIED.

IT IS SO ORDERED.

DATED:   July 5, 2022   .

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge